[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action for dissolution of marriage was commenced by the plaintiff husband in June 1998 on the ground of irretrievable breakdown. In addition to a dissolution of the marriage, the plaintiff seeks custody of the minor child and an equitable distribution of the marital assets. The defendant wife filed an answer and a cross complaint seeking, among other things, a dissolution of the marriage, alimony, the restoration of her maiden name, and the distribution of certain financial assets.
On October 21, 1999, a trial was held on the complaint and cross complaint. Both parties were represented by counsel. Additionally, the State of Connecticut was represented by Assistant Attorney General George Szydkiwski. The only testimony received by the court was that of the plaintiff. The defendant, who was notified by her attorney of the time and date of the trial, failed to appear for trial. From the evidence produced at trial, the court finds the following facts to have been proven.
Robert Sigafose and Arlene Diaz met and began a relationship in 1986. The parties lived together for approximately two years before their marriage. The parties were intermarried on September 12, 1989 in Trumbull, Connecticut. They separated in June 1996.
Amanda Daria Sigafose, who was born on September 25, 1987, is the only issue of this marriage. No other minor children have CT Page 295 been born to the defendant-wife since the date of the parties marriage. Both the defendant wife and the minor child are receiving state and/or federal assistance. One of the parties has lived continuously within the State of Connecticut for at least twelve months before the filing of the complaint and the cross complaint and all statutory stays have expired. The court finds that it has jurisdiction over the parties and the marriage.
The plaintiff, age 43, has been gainfully employed throughout the marriage and has been employed with the U.S. Postal Service since 1989. In 1998 the defendant's gross earnings were $44,860 which included overtime pay. His gross weekly pay as of the date of trial was approximately $735 with a net weekly wage of $562.
The defendant, age 47, the defendant has worked in several part time positions over the years. Otherwise, she has remained at home as a homemaker and mother. She is currently considered disabled suffering from bipolar mental disorder. The defendant began exhibiting symptoms of this disorder shortly after the parties were married, and during the subsequent ten years of this marriage she has exhibited increasingly bizarre behavior. She has been institutionalized in several mental health facilities nineteen times over the past ten years, primarily as a result of not taking her prescribed medication. The hospitalizations ranged from a few days to a maximum of fifteen days. The defendant is entitled to receive state and federal benefits because of her disability. She is currently receiving medical benefits.
In 1996, Amanda, was committed to the care and custody of the Department of Children and Families as a child at risk due to the mother's mental health problems and the mother's accusations of neglect and abuse by the father. The child was placed with the plaintiff's brother and sister-in-law for two and one-half years while DCF investigated the situation. The plaintiff visited with Amanda every weekend while she was in the custody of DCF. The defendant's contact with the child was less consistent. Amanda's guardianship was eventually returned to the parents.
Since the return of guardianship to the parents, Amanda, who is now twelve years old, has been living with her father. She is in special education classes in schools and takes medication for ADHD. She is also receiving a Social Security Disability payment in the amount of $75 per month. The plaintiff seems to be very devoted to his daughter. He has engaged two day care providers to care for the child while he is working. He has her in therapy. He CT Page 296 has enrolled her in after school activities, and he appears to be actively involved in her education and welfare. The defendant, on the other hand, has had little contact or interaction with the child. That is not an indictment of the defendant, but rather a reflection of her mental illness.
The financial affidavits submitted by the parties at and prior to the date of trial reflect few assets. The only asset reported by the defendant is a 1990 Chevrolet Lumina valued at $2840 with no loan balance. The plaintiff Lists a 1998 Chevrolet Malibu valued at $17,000 with a loan balance of $15,000. The plaintiff is vested in a pension fund with the U.S. Postal Service and he has approximately $15,000 in a Thrift Savings Plan. The plaintiff also has 333 hours of vacation time accumulated with a value of approximately $6,300. An additional 908 hours of accumulated sick time has no redeemable monetary value as it must be used for medical or dental purposes and is forfeited upon termination of employment with the Postal Service. The only other assets listed are $800 in U.S. Savings bonds for Amanda, and $68.00 in a savings account.
Taking into consideration all of the statutory criteria, especially those set forth in § 46b-62, § 46b-81, and § 46b-82, and applying said criteria to the evidence, the court enters the following orders:
1. A degree is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown, all the allegations of the complaint having been proven true. No evidence was presented by the defendant on the cross-complaint. It is dismissed as moot.
2. The parties shall have joint legal custody of the minor child, Amanda Sigafose. Physical custody as well as the residence of the child shall be with the plaintiff father. The plaintiff shall be entitled to claim Amanda as a dependant for state and federal tax purposes.
3. The defendant shall have reasonable visitation rights with the child. However, given the history of mental illness of the mother, as well as the special needs of the child, the parameters of said visitation should be re-evaluated and adjusted from time to time upon recommendation of the Department of Family Relations based upon its continuing assessment of the needs and limitations of the mother and child, as well as the wishes of Amanda regarding visitation. Until then the mother will be permitted to CT Page 297 visit with the child every Sunday from 12:00 noon until 6:00 p. m. beginning on January 16, 2000. The father will make arrangements to have his daughter dropped off and picked up at the residence of the mother at those times. Amanda is not to be left at her mother's residence unless it is verified that her mother is present and capable of caring for Amanda. The mother shall notify the father no later than the preceding Thursday if she is unable to keep her scheduled visit with Amanda. Both the defendant and Amanda are to be afforded unlimited telephone communication with each other.
4. Neither party shall remove the child from the State of Connecticut without prior permission from the court. The custodial parent shall not change the child's school during the school year without prior permission of the court.
5. The plaintiff shall be solely responsible for the support of the minor child. This order takes into consideration the defendant's mental health concerns, her assets, her very limited current and projected limited income, and her status as a state and federal aid recipient. This is order is subject to modification if there is a substantial improvement in the defendant's financial situation beyond that which results from orders contained in this judgement.
6. The plaintiff shall provide continuous medical and dental insurance for the minor child through his employer until said child reaches the age of 19 years or completes high school, whichever occurs first. In the event that such insurance coverage is no longer available through his employment, the plaintiff shall apply for medical coverage for the child through the State of Connecticut HUSKY program. The plaintiff shall be responsible for any unreimbursed medical expenses of the minor child unless there is a significant improvement in the defendant's financial situation.
7. Inasmuch as the defendant is eligible for and is receiving medical benefits through governmental assistance, the plaintiff shall not be responsible for providing health insurance for the defendant wife and may terminate her from his health care plan.
8. Each party shall be solely liable for the debts and liabilities listed on their financial affidavits and each shall hold the other harmless for said debts and liabilities as well as any additional debts incurred by either party. With the exception CT Page 298 of orders herein stated, each party shall retain the assets listed on their respective financial affidavits.
9. The plaintiff shall pay alimony to the defendant in the amount of $1.00 per year. In awarding alimony in this amount to the defendant it is the intent of the court to protect the benefits which the defendant is currently receiving and to which she may be entitled from the State of Connecticut and the Social Security Administration, and also to protect the financial interests of the state and federal governments regarding the payment of said benefits to the defendant. The order for alimony shall terminate upon the death of either party, or upon the remarriage of the defendant, or upon her cohabitation with an unrelated male which results in a significant improvement in her financial circumstances.
10. No alimony shall be awarded to the plaintiff.
11. The defendant is awarded the 1990 Chevrolet Lumina automobile. The plaintiff shall transfer title to said automobile within 30 days of the date of this decision. The defendant shall thereafter hold the plaintiff harmless as to any taxes, liens, encumbrances and insurance on said vehicle, that the plaintiff shall pay the premium for the minimum insurance coverage except allowed pursuant to statute for the defendant's 1990 Chevrolet Lumina through the year 2000.
12. The plaintiff shall retain all right, title and interest on the 1998 Chevrolet Malibu and shall hold the defendant harmless as to any taxes, liens, encumbrances and insurance on said automobile.
13. The plaintiff shall transfer to the defendant one-half of the value of his U.S. Postal Service Retirement Plan, as of the date of this judgement, by means of a Qualified Domestic Relations Order prepared by her attorney.
14. In lieu of awarding the defendant a lump sum portion of the plaintiff's Thrift Savings Plan and the value of his accumulated vacation leave, the plaintiff is ordered to pay to the defendant, as a property settlement, $300.00 per month for 30 consecutive months, beginning February 2000. Said payment is to be made to the defendant by the 10th day of each month. The plaintiff may not prepay any monthly payment. CT Page 299
15. Since the defendant has very limited financial resources, it would undermine the equitable purpose of the court ordered distribution of marital property to require her to use the modest funds available to her from the property settlement for the payment of all her attorney fees. Therefore, the plaintiff is ordered to pay the sum of $750 in attorney fees to Attorney Barbara J. Ruhe within 60 days of this decision.
16. The defendant may resume using her maiden name, Arlene Diaz
17. This matter is referred to Family Relations for a study, evaluation and recommendations concerning the issue of visitation by the mother pursuant to order #3 above.
18. Counsel for the plaintiff shall prepare, and submit to the court, a judgement file within 30 days of the date of this judgement. The attorneys for both parties shall sign the judgement file.
Terence A. Sullivan Superior Court Judge